UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTEM VIKTOROVICH KIRICHENKO,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, et al.,<br><br>Respondent. | CASE NO. 2:26-cv-00199-BAT<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 1. Petitioner is detained by United States ("U.S.") Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner asserts claims for violation of his Fifth Amendment right to Due Process and the Code of Federal Regulations. Dkt. 1. The Government has filed a return memorandum. Dkt. 6. Petitioner has filed a response/traverse. Dkt. 9.

## BACKGROUND

Petitioner is a native of Russia and citizen of the former-U.S.S.R. Dkt. 7 (Decl. of Javier Delgado ("Delgado Decl.")) at ¶ 3. He was admitted to the United States as a Lawful Permanent Resident in 1998. *Id.* In 2020, Petitioner was convicted of Possession with the Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Methamphetamine (21

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 1

U.S.C. §§ 841(a)(1), (b)(1)(C)) in the United States District Court for the Eastern District of Washington. *Id.* at ¶ 4; Dkt. 8 (Decl. of Michelle Lambert ("Lambert Decl.")) at Ex. A. The district court sentenced Petitioner to 39 months of federal custody. Dkt. 7 at ¶ 4.

ICE took custody of Petitioner when he was released from prison on January 7, 2022. Dkt. 7 at ¶ 5; Dkt. 8 at Exs. B, C, D. Department of Homeland Security ("DHS") placed him into removal proceedings by issuing him a notice to appear that charged him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii). Dkt. 7 at ¶ 5; Dkt. 8 at Ex. E.

On April 5, 2022, an immigration judge denied Petitioner's application for relief from removal and ordered him removed from the United States. Dkt. 7 at ¶ 6; Dkt. 8 at Ex. F. The order became administratively final, and Petitioner's removal period began. 8 U.S.C. § 1231(a)(2). Petitioner remained in post-order detention until November 10, 2022, when ICE released him on an Order of Supervision ("OSUP") and enrolled him in the Alternatives to Detention ("ATD") program. Dkt. 7 at ¶ 7; Dkt. 8 at Exs. G, H. ICE had been unable to obtain a travel document to execute Petitioner's removal to Russia. Dkt. 7 at ¶ 7.

On December 19, 2025, Respondents, through the declaration of deportation officer Delgado represent that "ERO conducted a case review and made a determination to detain Petitioner because he has an administratively final order. Dkt. 7 at ¶ 8; Dkt. 8 at Exs. I, J, K, L. Respondents represent that ICE revoked Petitioner's OSUP and detained him pursuant to 8 U.S.C. § 1231(a)(6). Dkt. 6. Respondents, through the declaration of deportation officer Delgado represent that "ERO revoked Petitioner's OSUP, and issued him an I-286, Notice of Custody Determination, in writing, the same day. The I-286 was signed by Supervisory Detention and Deportation Officer Taula Peter, and Petitioner refused to sign the document." Dkt. 7 at ¶ 8. Deportation Officer Delgado further represents that "ERO is working to obtain a TD for

Petitioner to Russia and believes it will obtain a TD within 1 to 3 months." *Id.* But Respondents also represent that Respondents' counsel "could not locate a written notice of OSUP revocation or informal interview documentation." Dkt. 6 at 5, n. 3.

The petition represents that when Petitioner asked why he was being re-detained he was told only that he was ordered removed and that ICE was re-detaining everyone with a final order. Dkt. 1 at 3. The petition further represents that Petitioner has not received a formal or informal interview, nor has he received any communication or information related to his re-detention by ICE. *Id.*

## DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*,

380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). And district courts have subsequently applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21, n. 4 (W.D. Wash. Aug. 19, 2025); *Rodriguez Jimenez v. Bondi*, 25-cv-02167-RSM, 2025 WL 3466925 (W.D. Wash. Dec. 3, 2025). Accordingly, the Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioner was arrested, has currently been re-detained for over a month (and was previously detained for several months in 2021 while the Government attempted and failed to effectuate his removal), and remains in custody undoubtedly deprives him of an established interest in his liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest is high under the facts of this case unless the

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 4

Government provides adequate notice of the reasons for his re-detention and a meaningful opportunity to respond. *See, E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316. Here, Petitioner was released on an OSUP and indicates he has complied with all the requirements under the OSUP – which Respondents do not dispute. Furthermore, Petitioner was given no information regarding the reasons for his re-detention aside from the fact that he had a final order of removal (which he had when he was released on the OSUP) nor is there evidence or argument presented by the Government of any changed circumstance or that Petitioner was given notice of any changed circumstance since his release.

In fact, as Petitioner also contends, the record reflects Petitioner's re-detention violates the Government's own regulations, specifically 8 C.F.R. § 241.13. That regulation states, in part, that "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.13(i)(2). The regulation also states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. §§ 241.13(i)(3). The Respondents do not allege that Petitioner was given a notice of the reasons for his revocation or an informal

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 5

interview, only that he was served with an I-286, Notice of Custody Determination, which does not list any reason for why his OSUP was being revoked, nor is there any evidence in the record of changed circumstances.

The Respondents asserts, through the declaration of deportation officer Delgado, that "ERO is working to obtain a TD for Petitioner to Russia and believes it will obtain a TD within 1 to 3 months." Dkt. 7 at 9. But officer Delgado gives no facts or evidence, to support this assertion or to explain why he believes they will be able to obtain a travel document for Petitioner now when they were unable to do so previously when he was detained for seven months in 2021. Respondents present no evidence of changed circumstance indicating there is a significant likelihood that Petitioner may now be removed in the reasonably foreseeable future. There is also no evidence in the record that since his release on the OSUP, Petitioner has otherwise violated the terms of the OSUP. Rather, Petitioner asserts, and the Respondents do not dispute, that he has complied with all of the requirements under the OSUP.

The Court notes that this Court has ordered the immediate release of a petitioner in similar circumstances finding that the regulations certainly appear to require "an individualized determination about the likelihood of removal based on changed circumstances, followed by notice and an opportunity to respond." *See Phetsadakone v. Scott*, No. 2:25-cv-01678-JNW, 2025 U.S. Dist. LEXIS 173785, at *8 (W.D. Wash. Sept. 5, 2025); *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *6 (W.D. Wash. Dec. 24, 2025).

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. The Respondents have an interest in ensuring a noncitizen with a final order of removal appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger to the community. *Zadvydas*, 533 U.S. at 690

(government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). But here Petitioner has been living for years in the United States with permission under an OSUP, and, as discussed above, there is no evidence of a change in his particular factual circumstances prior to his re-detention. And, in fact, Respondents failed to follow their own regulations which, at least to some extent, contemplate those interests, in revoking Petitioner's release. *Tran*, 2025 WL 3725677, at *6. The Court finds that the Government's interest here is low. *See, E.A. T.-B.*, 795 F. Supp. 3d 1316; *Tran*, 2025 WL 3725677, at *6 ("the Court finds that the government's interest in re-detaining a noncitizen, who has not violated the terms of their release nor whose removal is likely to occur in the reasonably foreseeable future, without a pre-detention hearing or some other pre-detention process is low).

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continuing release from custody, and that due process requires that Petitioner receive proper notice and an opportunity to respond before he can be re-detained. *Rodriguez Jimenez v. Bondi*, 25-cv-02167-RSM, 2025 WL 3466925 (W.D. Wash. Dec. 3, 2025).

Petitioner also argues he is indefinitely detained within the meaning of *Zadvydas* and entitled to release. *Zadvydas*, 533 U.S. 678. Petitioner is detained under 8 U.S.C. § 1231, which governs the detention and release of noncitizens who have been ordered removed (as opposed to noncitizens apprehended at the border under § 1225, or those not yet ordered removed, § 1226). Section 1231(a) provides that DHS is required to detain a noncitizen during a 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, or to release them on supervision. 8 U.S.C. §

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 7

1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *Zadvydas*, 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* Total length of confinement need not be consecutive to reach the six-month presumptively reasonable limit established in *Zadvydas*. *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288 (W.D. Wash. Aug. 21, 2025). "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. If the government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

Furthermore, as discussed above, under the regulations, once it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, noncitizens may be released on an Order of Supervision. 8 C.F.R. § 241.13(h). This can be revoked on account of changed circumstances where there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2).

Here, Petitioner asserts, and the Government does not dispute, that he has been held in detention, for purposes of the *Zadvydas* analysis, for over six months. The record reflects that Petitioner was detained for a seven-month period post-final order of removal in 2021, and that he has now been detained for an additional six weeks, from December 20, 2025, to present. The Government's only evidence of "changed circumstances" here is their conclusory assertion that

they are attempting to obtain a travel document and believe they will obtain one in 1 to 3 months. Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006).

The Court finds that given the Government's inability to obtain a travel document and deport Petitioner during the initial seven-month period he was detained post-final order of removal in 2021, and the additional six weeks he has now been detained from December 20, 2025 to present, their conclusory assertion that they believe they now, for some undisclosed reason, will be able to obtain he travel document, fails to show a changed circumstance under the above law and fails to rebut the Petitioner's showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, Petitioner's re-detention was unlawful and his continued detention unreasonable. Under the above law, immediate release is warranted.

Petitioners also seek prospective injunctive relief adjacent to his habeas petition seeking protection in the event ICE re-detains him. Specifically, he requests an order preventing Respondents from re-detaining Petitioner without providing adequate notice of the reasons for his re-detention and a meaningful opportunity to respond. Dkt. 1 at 14. Because Petitioner's claims invoke the Court's habeas and federal question jurisdiction, the Court may provide equitable relief on those claims if Petitioner meets the standard for a permanent injunction. *See Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020).

The Court adopts the analysis on this issue recently set forth by the Court in *THAN DINH LE, Petitioner(s), v. PAMELA BONDI, et al., Respondent(s). Additional Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't,* No. C25-2454-KKE, 2026 WL 309239, at *6 (W.D.

Wash. Feb. 5, 2026):

> Given Respondents' well-documented and widespread failures to comply with 8 C.F.R. § 241.13(i)(3) (in this case and countless others throughout the country[1]), [Petitioner's] concerns regarding re-detention without process are not speculative… However, notwithstanding [Petitioner's] well-founded fear of future regulatory violations, the Court cannot determine on this record whether due process would require a pre-detention hearing before an IJ in a hypothetical re-detention regardless of the circumstances. Constitutional due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but, rather, "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted).

The Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of [Petitioner's] release. Accordingly, at this juncture, the Court finds it sufficient to order that, if Respondents revoke [Petitioner's] OSUP and re-detain him in the future, they must fully comply with the procedure set forth in 8 C.F.R. § 241.13(i), including a meaningful opportunity for [Petitioner] to know and contest the basis for the revocation. In declining [Petitioner's] request to determine, at this time, whether a pre-detention hearing before an IJ is necessarily required in all cases, the Court is not foreclosing [Petitioner's] ability to challenge—on procedural due process or other grounds—any revocation of his OSUP in the future, at which time the Court would have the benefit of a record of the particular circumstances at issue.

## CONCLUSION

For the foregoing reasons, the Court ORDERS:

(1) The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is GRANTED.

Respondents shall immediately release Petitioner from immigration detention under the

---

[1] [FN 2 by *Le* Court] *See, e.g., Lecky v. Bondi*, No. 2:25-CV-02637-TLF, 2026 WL 266066, at *5 (W.D. Wash. Feb. 2, 2026) (Government failed to provide evidence of an informal interview, revocation custody review, or evaluation of contested facts); *Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *10 (S.D. Tex. Jan. 28, 2026) (Government failed to show petitioner received notice of OSUP revocation or any internal procedures to evaluate his changed circumstances justifying re-detention); *Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *3–6 (S.D. Cal. Jan. 27, 2026) (Government failed to provide an opportunity to submit evidence contesting OSUP revocation and failed to show a basis for ICE's determination of changed circumstances); *Tran v. Bondi*, No. 2:25- CV-02335-DGE-TLF, 2025 WL 3725677, at *5–7 (W.D. Wash. Dec. 24, 2025) (Government re-detained petitioner without a basis to conclude that changed circumstances supported a reasonably foreseeable removal); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *2-3 (W.D. Wash. Dec. 3, 2025) (Government could not "confirm whether Petitioner received an informal interview pursuant to 8 C.F.R. § 241.13(i)(3)").

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 10

1     conditions of his most recent order of supervision within 1 (one) working day from the

2     date of this order. Respondents shall file a certification within 2 (two) working days that

3     Petitioner has been released.

4 (2) Petitioner shall not be re-detained without notice and an opportunity to be heard unless

5     Respondents have evidence detention is authorized under 8 C.F.R. §§ 241.13(i) and 8

6     U.S.C. § 1231. Per this Order, the evidence the Respondents presented in this matter is

7     insufficient to meet the requirements of 8 C.F.R. §§ 241.13(i)(1) or (2). *Tran v. Bondi*,

8     No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *8 (W.D. Wash. Dec. 24, 2025);

9     *THAN DINH LE, Petitioner(s), v. PAMELA BONDI, et al., Respondent(s). Additional

10    Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. C25-2454-KKE,

11    2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026).

12 (3) The Court will entertain a motion for attorney fees and costs. Any fee petition shall be

13    filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and

14    shall be noted under Local Rule 7(d)(3).

16    DATED this 10th day of February, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 11